UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF INDIANA AND KENTUCKY, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:17-cv-1636 |
| COMMISSIONER, INDIANA STATE DEPARTMENT OF HEALTH, in his official capacity; PROSECUTORS OF MARION, LAKE, MONROE, and TIPPECANOE COUNTIES, INDIANA, in their official capacities; THE MEMBERS OF THE INDIANA MEDICAL LICENSING BOARD, in their official capacities; JUDGE, MARION SUPERIOR COURT, JUVENILE DIVISION, in her official capacity, | ) | |
| Defendants. | ) | |

**Complaint for Declaratory and Injunctive Relief / Notice of Challenge to Constitutionality of Indiana Statutes**

**Introduction**

1. Senate Enrolled Act No. 404, signed into law by the Governor of the State of Indiana, amends the current procedure that exists in Indiana where an unemancipated minor may seek an order from an Indiana juvenile court to allow her to obtain an abortion without consent of a parent, legal guardian, or custodian ("parent"). Under the current statute, if the unemancipated minor is deemed to be sufficiently mature to make the abortion decision without parental consent or the court concludes that it is in the best interests of the minor that the abortion be allowed, the court will issue an order

dispensing with the consent requirement. Consistent with longstanding constitutional requirements, the parents will not be notified of the court proceeding or the court's decision regardless of whether the petition is approved or denied.

2. However, under the amendment enacted by the Enrolled Act, Indiana Code § 16-34-2-4 (eff. July 1, 2017), notice to the parents is required unless the juvenile court separately finds that it is in the minor's best interests that such notice not issue, even if the court concludes that the minor is mature enough to make the abortion decision independently and even if the court has not yet ruled upon, or has denied, the petition.

3. The amended statute therefore may result in a minor who has been determined by the juvenile court to be of sufficient maturity to make the abortion decision independently nevertheless having her parents notified of her pregnancy and her plans to obtain an abortion. It also may result in an unemancipated minor who seeks to obtain an abortion without parental consent nevertheless having her parents notified that she is in fact pregnant and either is attempting to obtain an abortion without such consent or that she was rebuffed by the juvenile court in her efforts to obtain such consent. The Seventh Circuit has previously noted that "[i]t is hardly speculative to imagine that even some mature minors will be deterred from going to court if they know that their parents will be notified if their petitions are denied, because no minor can be certain that the court will rule in her favor." *Indiana Planned Parenthood Affiliates Ass'n, Inc. v. Pearson*, 716 F.2d 1127, 1141 (7th Cir. 1983). The amended statute is not supported by a legitimate justification, fails to comply with requirements necessary for a parental involvement statute to pass constitutional muster, and creates an

unconstitutional undue burden on unemancipated minors who do not have the consent of their parents and who wish to obtain an abortion.

4. Section 4 of the Act also amends Indiana's preexisting law to require that physicians execute an affidavit when parental consent is provided for the abortion, after obtaining identification and other evidence from the unemancipated minor and her parent, certifying that "to the best information and belief, a reasonable person under similar circumstances would rely on the information provided . . . as sufficient evidence of [the] identity and relationship" between the young woman and the parent providing consent. This is a hopelessly vague standard and, given that the failure to comply with the statute can lead to criminal liability as well as other consequences, the statute violates due process. Moreover, imposing the cumbersome process specifically on the physician to review this information and to execute this affidavit when there are no other medical procedures – even surgical procedures in hospitals – that require this is irrational and violates both equal protection and due process.

5. Section 5 of the Act prohibits persons from aiding or assisting an unemancipated minor seeking an abortion from obtaining the abortion without satisfying the amended consent procedures created by the Act. This prohibits Planned Parenthood of Indiana and Kentucky, Inc. ("PPINK") from advising its minor patients and persons seeking abortion services that they can travel to other states to obtain their abortions. The compelled silence demanded by the Act violates the First Amendment.

6. Appropriate injunctive and declaratory relief should issue to remedy these constitutional deficiencies.

**Jurisdiction, venue, cause of action**

7. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1343.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

9. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

10. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

11. PPINK is a not-for-profit corporation with its principle place of business in Indiana. It brings this action on its own behalf, on behalf of its patients, and on behalf of its staff, including the physicians who, as employees or contractors, perform abortions for PPINK's patients.

12. The Commissioner of the Indiana State Department of Health is the duly appointed official in charge of that agency, which is responsible for licensing abortion clinics pursuant to Indiana law. He is sued in his official capacity and is designated by his official title pursuant to Rule 17(d) of the Federal Rules of Civil Procedure.

13. The Prosecutors of Marion, Lake, Monroe, and Tippecanoe Counties, Indiana, are the duly elected prosecutors of the counties in which PPINK health centers are located that provide abortion services and the prosecutors are responsible for prosecuting crimes occurring in their respective counties. They are sued in their official capacities and are designated by their official titles pursuant to Rule 17(d) of the Federal Rules of Civil Procedure.

14. The Members of the Indiana Medical Licensing Board comprise the administrative body that regulates and disciplines physicians in Indiana. The Members are sued in their official capacities pursuant to Rule 17(d) of the Federal Rules of Civil Procedure.

15. The Judge of Marion Superior Court, Juvenile Division, is the duly elected judge of the Court who has been assigned to be the judge in Marion County Indiana's juvenile court. She is sued in her official capacity pursuant to Rule 17(d) of the Federal Rules of Civil Procedure and, pursuant to 42 U.S.C. § 1983, is sued for declaratory relief only.

**Legal background**

16. Senate Enrolled Act No. 404 was signed into law by the Governor of Indiana on April 25, 2017.

17. Section 4 of the Act, codified as amended Indiana Code 16-34-2-4 (eff. July 1, 2017), makes changes to the prior statutory requirements that allowed an unemancipated minor to obtain an abortion, either with consent of her parent, or with a judicial waiver of the consent requirement.

18. Consistent with constitutional requirements for statutes that mandate parental involvement before a minor can obtain an abortion, under the existing statute, Indiana Code § 16-34-2-4 (amended eff. July 1, 2017), a minor who is unable or unwilling to seek parental consent for an abortion, or who is unable to procure the consent, may petition the juvenile court in the county where she resides or where the abortion is to take place and the court is to waive the requirement of consent if the court concludes that the

minor is mature enough to make the decision independently or that the abortion would be in the minor's best interests.

19. The amended Indiana Code § 16-34-2-4 (eff. July 1, 2017), continues to allow the minor to petition the juvenile court and continues to provide that parental consent can be waived if the unemancipated minor is mature enough or the abortion is in her best interests. However, the amended statute provides for parental notification of the minor's intent to obtain an abortion, as follows:

> (d) Unless the juvenile court finds that it is in the best interests of an unemancipated pregnant minor to obtain an abortion without parental notification following a hearing on a petition . . . a parent, legal guardian, or custodian of a pregnant unemancipated minor is entitled to receive notice of the emancipated (*sic*) minor's intent to obtain an abortion before the abortion is performed . . . . The attorney representing the unemancipated pregnant minor shall serve the notice required by this subsection by certified mail or by personal service and provide the court with documentation of the attorney's good faith effort to serve the notice, including any return receipt for a certified mailing. The court shall retain the documentation provided in the confidential records of the waiver proceeding held under this section.
>
> (e) The juvenile court must rule on a petition filed by a pregnant minor . . . within forty-eight (48) hours of the filing of the petition. Before ruling on the petition, the court shall consider the concerns expressed by the pregnant minor . . . The requirement of parental consent under this section shall be waived by the juvenile court if the court finds that the minor is mature enough to make the abortion decision independently or that an abortion would be in the minor's best interest. The juvenile court shall waive the requirement of parental notification under subsection (d) if the court finds that obtaining an abortion without parental notification is in the best interest of the unemancipated pregnant minor. If the juvenile court does not find that obtaining an abortion without parental notification is in the best interests of the unemancipated pregnant minor, the court shall, subject to an appeal . . ., order the attorney representing the unemancipated pregnant minor to serve the notice required under subsection (d).

Ind. Code § 16-34-2-4 (eff. July 1, 2017).

20. Therefore, the amended statute provides that even if the juvenile court concludes that the unemancipated minor is sufficiently mature to make the abortion decision independently, notice to her parents must be given unless the juvenile court finds that not giving notice is in the minor's best interests.

21. Moreover, the statute allows for notice to be ordered even if the juvenile court concludes that waiver of parental consent should not occur. Indeed there is nothing in the statute to prevent the juvenile court from immediately ordering notice and waiting 48 hours to rule on the waiver of consent request.

22. Another portion of Section 4 of the Act provides that in order for any consent for an unemancipated minor to obtain an abortion to be valid, and for the abortion to be performed, the physician performing the abortion must obtain, in addition to the written consent of the parent:

> (2) government issued proof of identification of the parent or the legal guardian, or custodian of the unemancipated pregnant minor; and
>
> (3) some evidence, which may include identification or other written documentation that provides an articulable basis for a reasonable prudent person to believe that the person is the parent or legal guardian or custodian of the unemancipated pregnant minor.

Ind. Code § 16-34-2-4(a) (eff. July 1, 2017).

23. The amended statute further provides that:

> A physician receiving parental consent under subsection (a) shall execute an affidavit for inclusion in the unemancipated pregnant minor's medical record. The affidavit must contain the following information:
>
> (1) The physician's name.

> (2) Certification that, to the best information and belief, a reasonable person under similar circumstances would rely on the information provided by the unemancipated pregnant minor and the unemancipated pregnant minor's parent or legal guardian or custodian as sufficient evidence of identity and relationship.
>
> (3) The physician's signature.

Ind. Code § 16-34-3-4(k) (eff. July 1, 2017).

24. The Enrolled Act adds a new statutory provision, Indiana Code § 16-34-2-4.2(c) (eff. July 1, 2017), that provides that aside from assisting an unemancipated minor to obtain parental consent or a waiver of parental consent under Indiana Code § 16-34-2-4. "[a] person may not knowingly or intentionally aid or assist an unemancipated pregnant minor in obtaining an abortion without the consent required" by Indiana Code § 16-34-2-4. And, if the new Indiana Code § 16-34-2-4.2(c) (eff. July 1, 2017) is violated the unemancipated minor or her parent, legal guardian, or custodian may sue for damages, including punitive damages, and may receive costs and attorney's fees. Ind. Code § 16-34-2-4.2(d) (eff. July 1, 2017).

25. Under Indiana law the Indiana Medical Licensing Board regulates physicians, Indiana Code § 25-22.5-2-7; 844 IAC 5-2-1, and has the power to discipline any physician who, among other things, "knowingly violate[s] any state statute or rule, or federal statute or regulation, regulating the profession in question," Indiana Code § 25-1-9-4(3).

26. Indiana law provides that all abortion clinics must be licensed by the Indiana State Department of Health, 410 IAC 26-2-1, and the license can be revoked by the Commissioner of the Indiana State Department of Health, or other discipline imposed,

for a number of reasons, including: violation of any provision of Title 410, Article 26 of the Indiana Administrative Code, which includes a requirement that entries in medical records be made by authorized individuals, 410 IAC 26-7-2(b)(3), and "[p]ermitting, aiding, or abetting the commission of any illegal act in an abortion clinic," 410 IAC 26-2-8(b)(1), (2).

27. Indiana Code § 16-34-2-7 provides, among other things, that a physician who performs an abortion intentionally or knowingly in violation of Indiana Code § 16-34-2-4 commits a Class A misdemeanor.

28. A physician with an Indiana license who commits a crime that has a direct bearing on the physician's ability to practice competently or is harmful to the public or who knowingly violates any state law or rule regulating the medical profession is subject to discipline from the Indiana Medical Licensing Board. Ind. Code § 25-1-9-4(a)(2), (3).

**Factual allegations**

*General facts*

29. PPINK operates numerous health centers in Indiana where thousands of women, men, and teens receive reproductive health services and comprehensive sexuality education.

30. PPINK operates three health centers in Indiana, located in Bloomington, Merrillville, and Indianapolis, which offer both surgical abortion services and abortions using medications alone (known as "medication abortions").

31. Additionally, PPINK operates a health center in Lafayette, Indiana, which provides only medication abortions.

32. At PPINK, surgical abortions are available through the first trimester of pregnancy, 13 weeks and 6 days after the first day of a woman's last menstrual period, as determined by ultrasound.

33. Medication abortions are currently available through 70 days after the first day of a woman's last menstrual period as determined by ultrasound.

34. PPINK both employs and contracts with physicians who provide abortion services.

*The amended bypass statute with the new parental notice provisions - Indiana Code § 16-34-2-4 (eff. July 1, 2017)*

35. PPINK regularly provides abortion services to unemancipated minors who have parental consent for the abortion and also provides abortion services to unemancipated minors who have received a judicial waiver of the requirement for parental consent from an Indiana juvenile court through the current waiver procedure noted above.

36. The majority of these judicial waivers are issued by the Marion Superior Court, Juvenile Division.

37. PPINK is aware that the judicial waivers that its patients receive generally specify that the unemancipated minor is mature enough to receive an abortion independent of her parents. This is not surprising. Attempting to obtain an abortion, no less go through a judicial bypass proceeding, without parental support requires sufficient maturity. For example, a minor seeking a judicial bypass must, among other

things, learn of the requirement, contact and meet with a lawyer, arrange to get to the courthouse, and demonstrate to a stranger that she understands and has considered all of her options.

38. PPINK is also aware that once judges find that a minor is mature enough to make the decision on her own, judges rarely if ever go on to consider the best interest prong.

39. PPINK is aware, both from national statistics and from its own experience, that the large majority of minors who obtain abortions do involve their parents in the decision.

40. However, PPINK is also aware that when an unemancipated minor does not consult with her parents about the minor's decision to obtain an abortion that there are frequently good reasons for the minor's reluctance. For example, the minor may fear that if a parent finds out about the pregnancy and the desired abortion she may be at risk of: violence from her parent, being removed from the home by her parent, or her parent actively preventing her from obtaining an abortion.

41. Beyond the serious risks to the minor that may arise if a parent discovers that she is pregnant and attempting to obtain an abortion, there are numerous other reasons why a minor may not wish to notify and involve her parent. The fear of parental disappointment is one. Not upsetting an already unstable home situation is another. Having parents who are overwhelmed (perhaps by dealing with serious illness in the family or another family crisis) is yet another. An almost 18-year-old teen who knows

that she is mature enough to make the decision on her own is yet another. Additionally, some parents are neglectful or absent.

42. PPINK is aware that unemancipated minors who are pregnant who wish to dispense with the parent's need to consent to an abortion generally have not informed their parents of their pregnancy and do not wish to do so.

43. Once these unemancipated minors seeking abortion services are informed that if they file to waive parental consent for their abortion their parents might nevertheless be notified of their action, even if they are found mature enough to make an independent decision, and even if the petition is denied, a number of these young women will not proceed with attempting to obtain a judicial waiver and will not obtain an abortion.

44. The parental notice provision of the judicial waiver statute, Indiana Code § 16-34-2-4 (eff. July 1, 2017), will result in pregnant unemancipated minors being deterred from obtaining abortions.

45. On behalf of its minor patients PPINK objects to the parental notice provision of the judicial waiver statute, Indiana Code § 16-34-2-4 (eff. July 1, 2017), insofar as it will restrict the ability of the patients to obtain abortions.

46. If PPINK's physicians perform an abortion on an unemancipated minor in violation of Indiana Code § 16-34-2-7 they may be subject to criminal prosecution pursuant to Indiana Code § 16-24-2-7(b). The physicians may also be subject to licensing actions brought by the Medical Licensing Board pursuant to Indiana Code § 25-1-9-4(a)(2), (3).

47. The performance of these abortions may also lead to licensing actions against PPINK by the Indiana State Department of Health. 410 IAC 26-2-8.

*The new affidavit and collection of identification information imposed on PPINK's physicians by Indiana Code 16-34-2-4 (eff. July 1, 2017)*

48. Indiana law requires that a woman who wishes to obtain an abortion come to a health center and receive certain state-mandated information at least 18 hours prior to the abortion. Ind. Code § 16-34-2-1.1(a)(1).

49. Generally the physicians employed and contracted by PPINK to provide abortion services do not see the patients until after they have completed all of the paperwork required at the first visit, which includes any paperwork required for parental consent.

50. Therefore, PPINK employs staff to obtain the necessary medical and other information from patients and consenting parents before the physicians performing the abortions ever see the patient.

51. This information includes consents and other similar documents required by Indiana law and standard medical practice.

52. At the current time PPINK requires that a parent who consents to a daughter's abortion is to be present with the daughter at the initial appointment to, among other things, sign all relevant consents at least 18 hours before the abortion. If the pregnant minor has a legal guardian, the legal guardian must be present to sign all relevant consents at least 18 hours before the abortion. The only exception to this is if the minor has a court order to allow her to obtain an abortion without parental consent.

53. This information is obtained not by physicians but by health center staff who will also review and photocopy the documents presented by the parent to prove her or his identity. The minor will have to provide some form of identification as well, preferably a photo-id.

54. PPINK does not currently require that the parent present any other identification or documentation.

55. PPINK has reviewed Indiana Code § 16-34-2-4(a) (eff. July 1, 2017), and is aware that after July 1 its physicians must obtain from the parent, "some evidence, which may include identification or other written documentation that provides an articulable basis for a reasonably prudent person to believe that the person is the parent or the legal guardian or custodian of the unemancipated minor."

56. PPINK understands that if the the unemancipated minor is under a guardianship or similar court-ordered-custodial arrangement, there may be legal documentation, beyond identification, that can be examined to prove that the adult has legal decision-making authority for the minor. However, PPINK does not understand what evidence, other than government-issued identification, must be produced from a parent that complies with the requirement imposed by Indiana Code § 16-34-2-4(a) (eff. July 1, 2017).

57. In order to maximize the time that its physicians have to provide direct patient services and to be able to more economically serve its clients, both in terms of time and costs, PPINK attempts to minimize the time that the physicians it employs and contracts

with to provide abortion services must engage in clerical and similar types of services. This is why these functions are performed by other, non-physician, health center staff.

58. PPINK's physicians are not well-equipped to attest to what a reasonably prudent person would believe would be sufficient to lead her or him to believe that the person is the parent.

59. On information and belief Indiana law and regulations do not require physicians in contexts other than the provision of abortion services to examine identification and execute affidavits that are made a part of the patients' records. Yet, Indiana Code § 16-34-2-4(k) (eff. July 1, 2017), requires that a physician execute an affidavit, certifying that "to the physician's best information and belief, a reasonable person under similar circumstances would rely on the information provided by the unemancipated pregnant minor and the unemancipated pregnant minor's parent or legal guardian or custodian as sufficient evidence of identity and relationship." *Id.*

60. This unique requirement will not just require the physician to sign a form as a routine manner, but will require the physician to take the time to review the identification presented and perhaps to even question the unemancipated minor and the accompanying adult and then make a determination if sufficient evidence has been produced.

61. However, the information to which the physician must attest – that "a reasonable person under similar circumstances would rely on the information . . . as sufficient evidence of identity and relationship" – is vague and uncertain.

62. Executing the affidavit under circumstances when it is later determined that a reasonable person would not have relied on the information could lead to criminal liability against the physician and licensing actions against both the physician and PPINK. The possibility of criminal liability or licensing action is particularly concerning to PPINK and its staff given the controversial nature of abortion.

*The compelled silence imposed by Indiana Code § 16-34-2-4.2 (eff. July 1, 2017)*

63. In order to receive services at PPINK a patient may schedule an appointment on-line or may call PPINK's call center.

64. Women, including minors, will frequently contact PPINK for abortion services and it is discovered, either during an initial phone call or visit to one of the health centers, that PPINK cannot perform the abortion because the woman's pregnancy is past the first trimester, or there are other reasons why it would be desirable or necessary for the women to obtain an abortion in another state.

65. Therefore, PPINK's employees and agents will frequently inform women, including minors, concerning abortions services that may be available in other states and that they have the option to receive services in a state other than Indiana.

66. For example, PPINK and its staff are aware that in neighboring states – Illinois, Michigan, Ohio, and Kentucky – there are abortion providers who offer services into the second trimester. PPINK will inform patients and those seeking abortion services that it cannot provide in Indiana about the availability of these services in other states.

67. PPINK is aware that in some states a minor is able to obtain an abortion without parental consent or notice, and without going to court.

68. PPINK is also aware that the judicial bypass procedure as set out in Indiana Code § 16-34-2-4 (eff. July 1, 2017), which provides that notice to parents may be required even if a court finds that an unemancipated minor is mature enough to make the abortion decision, or even if the bypass request is denied, is potentially more onerous to the unemancipated minor than the comparable requirements in Indiana's neighboring states.

69. PPINK believes that the identification requirements imposed by Indiana Code § 16-34-2-4(a), which may require more than government-issued identification, are not present in the laws of other states.

70. Because of the more onerous requirements imposed upon minors seeking an abortion in Indiana by Indiana Code § 16-34-2-4 (eff. July 1, 2017), than in other states, and consistent with its history and practice of both informing its clients concerning the requirements of Indiana law and referring the clients elsewhere for services that it is unable to provide, PPINK would like to be able to inform unemancipated minors who seek abortion services of the requirements of Indiana Code § 16-34-2-4 (eff. July 1, 2017), and also inform them of the fact that other states have less onerous requirements.

71. However, providing the latter information will, after July 1, 2017, subject PPINK, its employees and agents, to civil liability under Indiana Code § 16-34-2-4.2(c) (eff. July 1, 2017).

72. If PPINK, its employees, or agents, violate Indiana Code § 16-34-2-4.2(c), PPINK is subject not only to civil liability, but also to defendant Secretary of the Indiana State

Department of Health taking actions against the licenses granted to PPINK's health centers performing abortions.

73. The risk of liability, adverse licensing actions, and other, as of yet, unknown consequences because of Indiana Code § 16-34-2-4.2(c), will force PPINK, its employees, and agents, to restrict their speech in counseling clients.

*Concluding allegations*

74. PPINK strongly believes that all women, even unemancipated minors, who are pregnant and wish to obtain an abortion should be able to do so consistent with the Constitution of the United States. Therefore, PPINK is committed to advocating for its patients' rights to obtain abortion services as constitutionally permitted.

75. At all times defendants will act under color of state law.

76. The actions of defendants will cause PPINK, and its staff, irreparable harm for which there is no remedy at law.

**Legal claims**

77. The parental notice provision contained in Indiana Code § 16-34-2-4 (eff. July 1, 2017) is unconstitutional as violating due process for the following reasons.

a. In order for a parental notice provision to be constitutional it must contain a bypass option similar to that approved in *Belotti v. Baird*, 442 U.S. 622 (1979), which requires, among other things, that a waiver be available to unemancipated minors who are mature enough to make the decision independently, and that all minors be able to seek a bypass without having a parent notified. Therefore, to the extent that the challenged statute allows for notice to an unemancipated

minor's parent, guardian, or custodian of her efforts to obtain an abortion the statute is unconstitutional.

b. The risk that the juvenile court may order that notice be given to the parent, guardian, or custodian, even if the court finds that the juvenile is sufficiently mature to make the decision independently and the risk that the court may order notice even if the waiver request is denied, creates a substantial and unwarranted obstacle to the young woman seeking to obtain an abortion. It is therefore an undue burden and is unconstitutional.

78. To the extent that Indiana Code § 16-34-3-4.2(c) (eff. July 1, 2017), prevents PPINK and its staff from informing its minor patients and prospective minor patients of the abortion options available in other states, the statute compels silence in violation of the First Amendment.

79. The requirement in Indiana Code § 16-34-2-4 (eff. July 1, 2017), that physicians performing an abortion obtain from the minor and the adult providing consent both government issued proof of identification and perhaps some other unspecified evidence that "provides an articulable basis for a reasonably prudent person to believe that the person is the parent or legal guardian or custodian," and that the physician execute an affidavit to this effect is:

a. A vague and uncertain standard that violates the due process clause of the United States Constitution.

b. Irrationally imposed only on physicians obtaining consents for abortions and not for other medical procedures performed on minors and therefore violates the equal protection clause of the United States Constitution.

**Request for relief**

WHEREFORE, Planned Parenthood of Indiana and Kentucky, Inc., requests that this Court:

a. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

b. Declare:

1. As to all defendants that Indiana Code § 16-34-2-4 (eff. July 1, 2017), is unconstitutional for the reasons noted above.

2. As to all defendants, with the exception of the Judge of the Marion Superior Court, Juvenile Division, that Indiana Code § 16-34-3-4.2(c) (eff. July 1, 2017) and Indiana Code § 16-34-2-4 (eff. July 1, 2017) are unconstitutional for the reasons noted above.

c. Enter a preliminary injunction, later to be made permanent, enjoining , as appropriate, Indiana Code § 16-34-2-4 (eff. July 1, 2017), Indiana Code § 16-34-2-4.2(c) (eff. July 1, 2017), and the duties imposed on physicians concerning the gathering of identification and execution of an affidavit as mandated by Indiana Code § 16-34-2-4 (eff. July 1, 2017).

d. Award plaintiff its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 against all defendants with the exception of the Judge of the Marion Superior Court, Juvenile Division.

e. Award all other necessary and proper relief.

s/ Kenneth J. Falk
Kenneth J. Falk
No. 6777-49

s/ Gavin M. Rose
Gavin M. Rose
No. 26565-53

s/ Jan P. Mensz
No. 33798-49
Jan P. Mensz
ACLU of Indiana
1031 E. Washington St
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
jmensz@aclu-in.org

Jennifer Dalven
Andrew Beck
Motions to Appear *Pro Hac Vice* to be filed
American Civil Liberties
New York, NY 10004
(212) 549-2641
jdalven@aclu.org
abeck@aclu.orf

Jennifer Sandman
Melissa Cohen
Motions to Appear *Pro Hac Vice* to be filed
Planned Parenthood Federation of America
123 William St.
New York, NY 10038
(212) 261-4584
jennifer.sandman@ppfa.org
Melissa.cohen@ppfa.org

Attorneys for Plaintiff