UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PLANNED PARENTHOOD GREAT          )
NORTHWEST, HAWAII, ALASKA,        )
INDIANA, KENTUCKY, INC,           )
                                  )
          Plaintiff,              )
                                  )
     v.                           )        No. 1:17-cv-01636-SEB-MG
                                  )
COMMISSIONER, INDIANA STATE       )
DEPARTMENT OF HEALTH, et al.,     )
                                  )
          Defendants.             )

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This cause is now before the Court on Plaintiff's Motion for Summary Judgment
[Dkt. 85] and Defendants' Cross Motion for Summary Judgment [Dkt. 88], filed on
December 16, 2022 and January 18, 2023, respectively.  Following the Supreme Court's
decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) and the
ensuing state-court litigation in Indiana, the only disputed issue remaining in this action is
Plaintiff Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky, Inc.'s
("PPGNHAIK") First Amendment challenge to Indiana Code § 16-34-2-4.2(c) (the "aid-
or-assist statute").  That state statute, among other things, prohibits any person from
providing assistance to a minor in pursuing out-of-state alternatives for obtaining an
abortion, including informing the minor of any such alternatives that may carry less
stringent requirements than those imposed under Indiana law.

In 2017, our court preliminarily enjoined enforcement of the aid-or-assist statute insofar as it would prohibit persons, including PPGNHAIK and its physicians, from disseminating to minors any information regarding legal abortion practices in states other than Indiana on grounds that the statute likely violated the First Amendment's free speech guarantee.  Defendants Commissioner, Indiana State Department of Health; Marion County Prosecutor; Lake County Prosecutor; Monroe County Prosecutor; Tippecanoe County Prosecutor; Members of the Indiana Licensing Board; and Judge, Marion Superior Court, Juvenile Division (collectively, the "State") challenged other portions of the Court's preliminary injunction order, but did not appeal the preliminary injunction issued by the Court as to the aid-or-assist statute; accordingly, that preliminary injunction we issued has remained in place since 2017.

PPGNHAIK now seeks final judgment in its favor as to its First Amendment challenge to the aid-or-assist statute, seeking to have the State permanently enjoined from enforcing Indiana Code § 16-34-2-4.2(c) not only insofar as the statute would prohibit PPGNHAIK and its physicians from disseminating information regarding legal abortion practices in states other than Indiana to minors who seek abortion services without complying with Indiana's parental consent requirements, but also insofar as it would prohibit PPGNHAIK and its physicians from making medical referrals and/or contacting out-of-state providers on behalf of such minors when requested.  The State, on the other hand, seeks final judgment in its favor, arguing that the aid-or-assist statute imposes a conduct-based restriction that does not encroach upon or violate First Amendment freedoms, and, even if the statute did regulate speech, it survives strict scrutiny because it

2

is narrowly tailored to vindicate Indiana's compelling interests in investigating criminal activity, safeguarding the parent-child relationship, and protecting the physical and psychological well-being of minors.

For the reasons detailed below, we <u>GRANT</u> Plaintiff's Motion for Summary Judgment and <u>DENY</u> Defendants' Cross Motion for Summary Judgment.

## **Factual Background**

Indiana's "aid-or-assist" statute prohibits "[a] person" from "knowingly or intentionally aid[ing] or assist[ing] an unemancipated pregnant minor in obtaining an abortion without the consent required" under Indiana law. IND. CODE § 35-41-2-4(c). The aid-or-assist statute "applies only if consent is required under [Indiana Code § 16-34-2-4] and has not been given."[1] IND. CODE § 16-34-2-4.2(a). A person who violates this

---

[1]   Under Indiana Code § 16-34-2-4, before performing an abortion on an unemancipated pregnant minor, a physician must obtain the notarized written consent of the parent, legal guardian, or custodian of the unemancipated minor, government-issued proof of identification from the consenting parent, legal guardian, or custodian, and "some evidence, which may include identification or other written documentation that provides an articulable basis for a reasonably prudent person to believe that the person is the parent, legal guardian, or custodian of the unemancipated pregnant minor." IND. CODE § 16-34-2-4(b). The physician must then execute an affidavit to be included in the unemancipated minor's medical record certifying that "to the physician's best information and belief, a reasonable person under similar circumstances would rely on the information provided by the unemancipated pregnant minor and the unemancipated pregnant minor's parent or legal guardian or custodian as sufficient evidence of identity and relationship." IND. CODE § 16-34-2-4(l).

These requirements are applicable in every case unless one of the following exceptions applies: (1) the unemancipated minor is pregnant as a result of rape or incest by a parent, legal guardian, or custodian; (2) the attending physician certifies in writing that there is an emergency need for a medical procedure to be performed to avert the pregnant minor's death or a substantial and irreversible impairment of a major bodily function of the pregnant minor; or (3) the unemancipated pregnant minor successfully petitions the juvenile court in the county in which they reside or in which the abortion is to be performed for a waiver of the parental consent requirement. To receive a waiver, the unemancipated pregnant minor must demonstrate to the juvenile court's satisfaction either that they are sufficiently mature to make the abortion decision independently or that the abortion would be in their best interests. Even if such a showing is

statute "is civilly liable to the unemancipated pregnant minor and the parent or legal guardian or custodian of the unemancipated pregnant minor."  IND. CODE § 35-41-2(d).

Originally adopted under a pre-*Dobbs* framework in which Indiana law permitted juveniles to have abortions in the first trimester so long as they had parental or judicial consent, the aid-or-assist statute precludes anyone from aiding or assisting unemancipated minors who have not complied with the parental consent requirements to obtain abortions in other states with less onerous abortion restrictions, including by providing information to such minors about abortion services available outside of Indiana.  Post-*Dobbs*, Indiana law has been recently amended to ban nearly all abortions in the state, with narrow exceptions for rape and/or incest, fatal fetal anomalies, and the life or health of the mother, and to require that those abortions that are permitted be performed in a hospital-owned ambulatory outpatient surgical center.[2]  *See* IND. CODE § 16-34-2-1.  The parties agree that these post-*Dobbs* amendments to Indiana abortion law do not affect the aid-or-assist statute which is still interpreted by the State to preclude anyone from aiding or assisting unemancipated juveniles from obtaining abortions in

---

made, the unemancipated pregnant minor's parent, legal guardian, or custodian is required to be provided notification of the unemancipated minor's intent to obtain an abortion before the abortion is performed unless the minor also demonstrates to the juvenile court's satisfaction that it is in their best interest to have the parental notification requirement waived as well.  IND. CODE § 16-34-2-4(b), (d).

[2] Because PPGNHAIK does not operate a hospital or ambulatory outpatient surgical center, under these amendments, it is prohibited from performing abortions in Indiana.  However, PPGNHAIK's standing to challenge Indiana's aid-or-assist statute is unaffected because the statute prohibits any person, not just abortion providers, from aiding or assisting a minor in obtaining an abortion without parental consent.

4

other states without parental consent, including by providing minors information regarding abortion services available in states other than Indiana.

PPGNHAIK, which operates 11 health centers in Indiana that provide a broad range of reproductive and sexual health services to thousands of clients, including adults and minors, is regularly contacted by patrons, including unemancipated minors, for abortion services. When PPGNHAIK is unable to perform the abortion services sought by its patients, its employees and physicians currently inform those clients, including unemancipated minors, that they have the option to receive abortion services in states other than Indiana. Smith Decl. ¶¶ 18–19. For example, PPGNGHAIK and its staff are aware that various states outside of Indiana have less restrictive abortion laws, including less restrictive parental bypass and notification requirements for unemancipated minor patients, and PPGNGHAIK will inform patients and those seeking abortion services of the availability of such services in other states. *Id.* ¶¶ 19–20.

PPGNGHAIK typically directs patients to the website <abortionfinder.org>, which maintains current information regarding the location(s) of available abortion services and gestational age limitations. *Id.* ¶ 19. Some of PPGNHAIK's health centers also provide patients with an informational sheet listing other locations where abortion services can be accessed. *Id.* PPGNHAIK and its staff will at times provide specific contact information for an abortion provider in another state. *Id.* ¶ 21. If a minor patient requests or appears to need additional assistance, PPGNHAIK seeks authority under law to contact an out-of-state abortion provider on the minor's behalf, either by contacting the

out-of-state provider in the minor's presence or by contacting the out-of-state provider

and requesting that the provider contact the patient directly.  *Id.*

PPGNHAIK desires to continue providing this information and assistance to

unemancipated minors who seek abortion care (including those who are pregnant as a

result of sexual activity other than rape or incest by a parent, legal guardian, or custodian)

but who have not obtained the consent of their parents, guardians, or custodians to an

abortion and who have not obtained a judicial bypass pursuant to Indiana Code § 16-34-

2-4.  It is undisputed that, based on current interpretations, doing so would subject

PPGNHAIK and its staff to civil liability under the aid-or-assist statute, which restriction

PPGNHAIK asserts is unconstitutional.

## **Legal Analysis**

### I.    **Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine disputes of material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for

summary judgment if it appears that no reasonable trier of fact could find in favor of the

nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate

the credibility of witnesses, id. at 255, but view the facts and the reasonable inferences

flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*,

573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).  Because the parties have filed cross-

motions for summary judgment and the same Rule 56 procedural standards apply, our review of the record requires us to draw all inferences in favor of the party against whom a particular issue in the motion under consideration is asserted. *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citing *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). We have done so here.

## II. Discussion

PPGNHAIK asserts that the aid-or-assist statute, insofar as it prohibits PPGNHAIK and its staff from sharing truthful information regarding available out-of-state alternatives for abortion care with unemancipated minor patients seeking abortion services without the consent required by Indiana law and/or communicating with out-of-state abortion providers on such patients' behalf, is a content-based regulation of pure speech that cannot survive strict scrutiny under constitutional analysis and thus violates their First Amendment free speech rights. The State rejoins that heightened judicial scrutiny is not warranted in this case because the aid-or-assist statute is directed at controlling conduct, not speech, and, to the extent it regulates speech, it is limited only to speech that plays "an integral part in the violation of a valid criminal statute," to wit, Indiana's parental-consent requirement.[3] *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949).

---

[3] To the extent that the State argues that the aid-or-assist statute is akin to informed-consent requirements, in that it "facilitates informed consent to a medical procedure by ensuring parental consent before a minor obtains her abortion," Dkt. 96 at 7, that argument is not well-taken. As we previously recognized in our order preliminarily enjoining enforcement of the aid-or-assist statute, the statute's prohibitions are not limited to medical providers; rather, *any* individual is prohibited under the statute from sharing truthful information regarding consent requirements

It is uncontested that the aid-or-assist statute prohibits *any* activity that aids or assists a minor in obtaining an out-of-state abortion without parental consent. Accordingly, its prohibitions clearly encompass restrictions on conduct, such as driving a minor to receive an out-of-state abortion without parental consent, as well as speech, in the form of communications, including information to minors regarding the names/locations of out-of-state abortion services that would not require parental consent and/or notice and medical referrals or contacting out-of-state abortion providers on behalf of minor patients seeking out-of-state abortion services that, while legal in those states, would not comply with Indiana's parental consent procedures. *See Valley Fam. Planning v. N. Dakota*, 489 F. Supp. 238, 242 (D.N.D. 1980), *aff'd*, 661 F.2d 99 (8th Cir. 1981) ("The referral of persons to a physician who performs abortions is a form of speech protected by the First Amendment.").

While it is "true that the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech," *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 567 (2011), even when a law "*generally* functions as a regulation of conduct," it is subject to First Amendment scrutiny when the supposed "conduct triggering coverage under the statute consists of communicating a message."

---

and abortion options in other states or contacting out-of-state abortion providers on behalf of minors who are not complying with Indiana's parental consent and notification procedures. Thus, these communications need not be tied to any medical procedure, and much of the information, such as the fact that other states may have more lenient parental consent and notification requirements for abortion, is generic, non-medical information that does not involve professional judgment, and is publicly available from a wide variety of sources, including the internet.

*Holder v. Humanitarian Law Project*, 561 U.S. 1, 27, 28 (2010) (emphasis in original). Such is the case here.  On its face, the aid-or-assist statute might be viewed as a restriction only on conduct, but, as applied to PPGNHAIK and its staff, any violation of the statute obviously "depends on what they say." *Id.* at 27.  If, for example, PPGNHAIK informs its unemancipated minor patients only of their available in-state abortion options or contacts an out-of-state healthcare provider on behalf of an unemancipated minor regarding medical care apart from abortion services, it will not run afoul of the aid-or-assist statute.  But if it informs such patients of out-of-state abortion services with less onerous parental consent requirements than those in effect in Indiana or communicates with an out-of-state healthcare provider regarding abortion services on behalf of an unemancipated minor patient who has not complied with Indiana's parental consent requirements, the aid-or-assist statute would forbid that speech.

The burdens here, therefore, are not "incidental."  They are not simply an indirect side effect of the regulation but are instead a core purpose of the regulation.  In this way, the aid-or-assist statute is readily distinguishable from the types of regulations on conduct that have been deemed by courts to have only incidental effects on speech, such as an employment anti-discrimination ordinance requiring removal of "White Applicants Only" signs, *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006), an ordinance against outdoor fires preventing flag burning, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992), or a COVID-related social distancing order making it more difficult for a political campaign to "round up signatures," *Morgan v. White*, 964 F.3d 649, 652 (7th Cir. 2020).

9

Unlike the statutes upheld in *Rumsfeld*, *R.A.V.*, and *Morgan*, the speech prohibited by the aid-or-assist statute—including providing minors information regarding legal out-of-state abortion services that would not require parental consent or notice and providing medical referrals or contacting out-of-state abortion providers on behalf of minor patients seeking out-of-state abortion services that would not comply with Indiana's parental consent procedures—is not merely incidental to separate, prohibited conduct of the sort at which the statute is aimed, but itself constitutes the very "aiding or assisting" that the statute prohibits.  Thus, we hold that, while the law here may in certain instances function as a regulation only of conduct, the aid-or-assist statute as applied to Plaintiff imposes a direct burden on speech because "the conduct triggering coverage under the statute consists of communicating a message" and nothing further.  *See Holder*, 561 U.S. at 28.

We are not persuaded by the State's contention that the aid-or-assist statute does not implicate First Amendment concerns because it merely burdens speech that furthers or induces unlawful conduct.  It is, of course, true that prohibiting and punishing speech "integral to criminal conduct" does not "raise any Constitutional problem," *United States v. Stevens*, 559 U.S. 460, 468 (2010), as "[s]peech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected." *United States v. Hansen*, 599 U.S. 762, 783 (2023); *see also Giboney*, 336 U.S. at 501 ("[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.").  Accordingly, "[m]any long established criminal laws permissibly criminalize speech … that is intended to induce or commence

illegal activities, such as fraud, bribery, perjury, extortion, threats, incitement, solicitation, and blackmail." *United States v. Trump*, ___ F. Supp. 3d ___, 2023 WL 8359833, at *15 (D.C. Dec. 1, 2023) (internal citations and quotation marks omitted).

That is not the situation before us, however.  Here, the criminal offenses and/or unlawful acts under Indiana law focus on the act of *performing* an abortion on an unemancipated minor without parental consent or, with intent to avoid Indiana's parental notification requirements, falsely claiming to be the parent or legal guardian or custodian of an unemancipated pregnant minor.  *See* IND. CODE § 16-34-2-4(b); IND. CODE § 16-24-2-4(m); IND. CODE § 16-34-2-7.  PPGNHAIK is not seeking to provide unemancipated minors information regarding how to procure an abortion within Indiana, in violation of these requirements, or to provide medical referrals or to contact physicians in Indiana on behalf of unemancipated pregnant minor patients for abortion services without parental consent.  Rather, PPGNHAIK seeks to provide truthful information to clients regarding out-of-state options and medical referrals to out-of-state providers for abortions services that are legal in those states.  An unemancipated pregnant minor who travels out of state to any jurisdiction with less onerous parental-consent requirements than those in effect in Indiana to *obtain* an abortion legal in that state is not committing a criminal offense or unlawful act, given that Indiana has not (to date) criminalized traveling to another state to obtain an abortion.  Providing unemancipated pregnant minors who have not complied with Indiana's parental consent requirements truthful information regarding out-of-state options for legally obtaining an abortion and providing medical referrals and/or contacting out-of-state providers on behalf of such minors

seeking to obtain abortion services that are legal in those states is therefore *not* inducing criminal activity.

For these reasons, the aid-or-assist statute as applied to Plaintiff directly regulates pure speech.  Thus, we must determine next what level of scrutiny applies to such regulation.  There is no real dispute between the parties that the aid-or-assist statute regulates speech on the basis of its content, since it would prohibit only speech that is related to abortion options for unemancipated minors seeking abortion services without having complied or seeking to comply with Indiana's parental consent requirements.  As such, it is a content-based restriction on speech and its enforcement is "directed at certain content," *Sorrell*, 564 U.S. at 567, and is based on the message expressed.

"Content-based regulations are presumptively invalid."  *R.A.V.*, 505 U.S. at 382. To survive strict scrutiny, the State must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015).  Accordingly, it is the State's burden to demonstrate that the aid-or-assist statute's singling out of speech relating to abortion care for minors who have not followed Indiana's parental consent requirements is necessary to "further[] a compelling interest and is narrowly tailored to that end."  *Id.*  "Though there is no exact definition of a compelling interest, it is one 'of the highest order' and is only found in 'rare cases.'"  *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 745 (7th Cir. 2015) (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)).

In an attempt to shoulder this burden, the State argues that the aid-or-assist statute furthers its compelling interests in safeguarding the parent-child relationship; protecting the physical and psychological well-being of minors by ensuring that medical providers have access to essential medical information by providing an opportunity for parents to supply such information to a physician; and in investigating possible criminal activity. Even assuming that these are, indeed, all compelling interests, the State has failed to present any evidence demonstrating that they are furthered by prohibiting private individuals from disseminating to unemancipated pregnant minors truthful information about lawful abortion practices and abortion care providers in states other than Indiana and contacting or providing referrals to out-of-state abortion providers on behalf of unemancipated pregnant minors, or that the statute is narrowly tailored to further such interests.

As noted above, it is not a crime for an unemancipated pregnant minor to travel outside of Indiana to receive abortion care that is lawful in that state.  Thus, prohibiting PPGNHAIK and its physicians from disseminating to unemancipated pregnant minors who have not complied with Indiana's parental consent requirements truthful information about less-restrictive abortion practices in other states and/or providing referrals to medical providers outside Indiana for abortion services lawful in such states does not further any interest Indiana may have in investigating criminal conduct within its borders. The aid-or-assist statute is therefore not narrowly tailored to further the State's interest in investigating criminal conduct because the statute covers *any* transfer of information regarding available abortion care options provided without parental consent, which

13

includes not only in-state abortion options for unemancipated minors who have not complied with Indiana's parental consent requirements that would be illegal under Indiana law but also legal out-of-state services. *See Ind. Civil Liberties Union Found., Inc. v. Superintendent, Ind. State Police*, 470 F. Supp. 3d 888, 903–04 (S.D. Ind. 2020) ("A restriction will not pass strict scrutiny where a 'less restrictive alternative' exists to achieve the Government's compelling interest.") (citation omitted).

The State has also failed to show how its interests in protecting the physical and psychological well-being of minors and the parent-child relationship are advanced by prohibiting private individuals, including medical providers, from disseminating truthful information about lawful abortion practices in other states and out-of-state healthcare providers who offer such services. Citing the Supreme Court's observation in *H.L. v. Matheson*, 450 U.S. 398 (1981), that, as applied to immature and dependent minors, parental consent statutes serve "a significant state interest by providing an opportunity for parents to supply essential medical and other information to a physician," *id.* at 411, the State contends that performing an abortion for an unemancipated pregnant minor without parental consent endangers that minor because it potentially denies abortion providers access to essential medical information that could be supplied by a parent and threatens the minor's ability to receive post-abortion care as well as interferes with a parent's interest in being involved in their dependent child's abortion decision. *See id.* ("The medical, emotional, and psychological consequences of an abortion are serious and can be lasting; this is particularly so when the patient is immature. An adequate medical and psychological case history is important to the physician. Parents can provide medical and

psychological data, refer the physician to other sources of medical history, such as family physicians, and authorize family physicians to give relevant data.") (internal footnotes omitted).

However, the dissemination of accurate information regarding a minor's reproductive care options is several steps removed from performing an abortion without parental consent. The State has not articulated *any* specific psychological or physical harm to minors that is caused by the mere dissemination of truthful information concerning lawful reproductive healthcare options and the medical providers who provide such services, particularly given that such information is readily and widely available to any member of the public via a simple internet search. Nor has the State presented evidence that being provided information about the availability of abortion in a state with more relaxed, less complex parental-consent requirements necessarily makes it less likely that a minor would thereafter consult with their parents regarding their reproductive health options or that prohibiting the dissemination of accurate facts about abortion services that are lawfully available to minors outside of Indiana and the medical providers who offer such services will correspondingly promote family cohesiveness or integrity or family communication.

As we recognized in granting Plaintiff's request for preliminary injunctive relief, "[i]n the context of a First Amendment challenge under the narrowly tailored test, the government has the burden of showing that there is evidence supporting its proffered justification." *Weinberg v. City of Chi.*, 310 F.3d 1029, 1038 (7th Cir. 2002) (citation omitted); *see also Ind. Civil Liberties Union Found.*, 470 F. Supp. 3d at 904 ("In order to

show that a restriction is necessary to further a compelling governmental interest, [the government] cannot rely upon 'anecdote and supposition.'") (citation omitted).  The State has fallen short of satisfying its burden here with regard to PPGNHAIK's dissemination of truthful and accurate information regarding out-of-state abortion care options and providers to its unemancipated pregnant minor patients.  The connection between that speech and the ultimate harms identified by the State is simply too attenuated to "justify[] the necessity" of the prohibition.  *Weinberg*, 310 F.3d at 1038.

As discussed above, PPGNHAIK also wishes to provide referrals to out-of-state abortion care providers and to contact such providers on behalf of its unemancipated pregnant minor patients when asked to do so, which speech would be prohibited by the aid-or-assist statute.  Again, we note: the harms the State maintains the aid-or-assist statute is intended to alleviate are all connected to the performance of the abortion without parental consent, yet the State has provided no objective evidence directly connecting such speech to the outcome it intends to prohibit.  Nonetheless, we acknowledge that, insofar as providing a referral or contacting an out-of-state provider may be considered speech that is a step further along the path to the decision to obtain an abortion without parental consent than speech that merely informs patients of their reproductive care options, the State's prohibition of such referrals and communication with out-of-state providers is ostensibly more closely connected to the ultimate harms at which the aid-or-assist statute is directed.  Even assuming that prohibiting PPGNHAIK and its physicians from making referrals or contacting out-of-state abortion care providers on behalf of unemancipated pregnant minors to some degree furthers the State's

16

interests in the health and safety of minors and the parent-child relationship, the State has nonetheless failed to demonstrate that the aid-or-assist statute is narrowly tailored to further those interests.

The State attempts to overcome its failure to establish this showing by arguing that because the aid-or-assist statute prohibits PPGNHAIK's speech only as it relates to unemancipated minors who have neither obtained nor are seeking to obtain either parental consent for their abortion or a judicial bypass of Indiana's parental consent requirements, the statute prohibits only that speech "which *specifically* interferes with the State's compelling interests in protecting the parent-child relationship and welfare of the child[]" and is therefore narrowly tailored to further the State's compelling interests. Dkt. 89 at 25 (emphasis in original). For the following reasons, we disagree with that reasoning.

The aid-or-assist statute explicitly provides that it applies unless the unemancipated minor "has obtained or is seeking to obtain: (1) parental consent; or a waiver of parental consent; under [Indiana Code § 16-34-2-4]." IND. CODE § 16-34-2-4.2(b). As discussed above, Indiana Code § 16-34-2-4 does not simply require verbal consent from a parent. Rather, it sets out a complex scheme of specific requirements, including that the consent be written and notarized, and that the physician performing the abortion comply with the identification and affidavit requirements described above. To have these requirements waived, a minor must undertake the process of obtaining a judicial bypass by proving to a juvenile court that they are mature enough to make the abortion decision without parental consent or that an abortion without parental consent

17

would be in their best interests.  Even if the minor succeeds in proving their entitlement
to a judicial bypass, their parent(s) are still entitled to notification of their decision to
have an abortion unless the juvenile court makes an additional finding that parental
notification is not in the minor's best interests.

Given the complexity of these procedures and the time and energy (and, we
assume, finances) required to complete them, not to mention the extremely narrow set of
circumstances in which a minor, even *with* parental consent, can obtain an abortion in
Indiana, there exist a myriad of reasons that a minor, either in consultation with their
parents, or who, by reason of their maturity or because an abortion would be in their best
interests and they would be entitled to a judicial bypass under Indiana law, would choose
to seek abortion care in a neighboring state with less restrictive parental consent and
notification requirements, rather than undertake compliance with Indiana Code § 16-34-
2-4.  If a minor, for example, does not qualify for any of the three limited exceptions to
Indiana's abortion ban (life or health of the mother, a pregnancy resulting from rape or
incest, or a fatal fetal anomaly), or would otherwise qualify but is too far along in their
pregnancy, the minor's only option for care would be to seek an abortion outside of
Indiana.  In such cases, it is pointless for the minor to seek to comply with the parental
consent requirements or to secure a judicial bypass because they still will not be able to
legally obtain an abortion in Indiana, even if they have parental consent or would be
entitled to a waiver of the parental consent requirements.  In other cases, whether due to
ease of scheduling, physical proximity, or state specific restrictions on the abortion
procedure, including whether an abortion may be obtained in a clinical setting, whether a

specific waiting period exists, or a specified length of time after a patient's last menstrual period when an abortion may be obtained, to name just a few reasons, a minor who has parental consent or who would be entitled to a judicial bypass might choose to lawfully obtain abortion care outside of Indiana, rather than seek to comply with Indiana Code § 16-34-2-4.

Thus, contrary to the State's contention, the aid-or-assist statute does not simply restrict PPGNHAIK's speech only as it relates to immature, dependent minors, but would also prevent PPGNHAIK and its physicians from speaking or otherwise communicating about out-of-state abortion care, even to minors who have parental consent for their abortion or who would be deemed mature enough to make the abortion decision for themselves but for whatever reason are not seeking to comply with Indiana's parental consent and/or judicial bypass procedures.  The aid-or-assist statute is therefore not narrowly tailored to further the State's compelling interests in the physical and psychological well-being of minors and the parent-child relationship, which the Supreme Court in *Matheson* recognized were significant state interests in the context of an *immature* minor seeking to obtain an abortion.  These interests do not justify a prohibition on speech related to out-of-state abortion options and/or on contacting such providers on behalf of a minor who is acting in consultation with her parents or to a mature minor capable of making the abortion decision independently, yet the aid-or-assist statute would nonetheless apply so long as such minors had not complied with the specific requirements of Indiana Code § 16-34-2-4.

For these reasons, we hold that the aid-or-assist statute does not survive strict scrutiny as applied to the speech PPGNHAIK has shown that the statute will prohibit. Therefore, application of the statute to PPGNHAIK would violate the First Amendment. However, because there are various other applications of Indiana Code § 15-24-2-4.2(c) that would not involve impermissible restrictions on speech, PPGNHAIK's entitlement to permanent injunctive relief extends no further than the speech described and approved herein. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006) ("We prefer … to enjoin only the unconstitutional applications of a statute while leaving other applications in force, … or to sever its problematic portions while leaving the remainder intact.") (internal citations omitted).

## III.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [Dkt. 85] is GRANTED and Defendants' Motion for Summary Judgment [Dkt. 88] is DENIED.

Defendants are hereby PERMANENTLY ENJOINED from enforcing Indiana Code § 16-34-2-4.2(c), insofar as it would prohibit Plaintiff and its physicians from disseminating to minors information regarding legal abortion practices and abortion care providers in states other than Indiana and from providing referrals to and contacting out-of-state abortion providers on behalf of their minor patients.  Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: _____5/1/2024_____

_Sarah Evans Barker_
_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

20

Distribution:

Andrew Beck
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
abeck@aclu.org

Melissa A. Cohen
PLANNED PARENTHOOD FEDERATION OF AMERICA
melissa.cohen@ppfa.org

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Thomas M. Fisher
OFFICE OF THE ATTORNEY GENERAL
tom.fisher@atg.in.gov

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Jennifer Sandman
PLANNED PARENTHOOD FEDERATION OF AMERICA
jennifer.sandman@ppfa.org